**Richard G. HIGH, Jr., et al., Plaintiffs,**

v.

**McLEAN FINANCIAL CORP., Defendant.**

**Civ. A. No. 86–3304.**

United States District Court, District of Columbia.

May 18, 1987.

---

Steven A. Skalet, Washington, D.C., for plaintiffs.

Jack L. Wuerker and Susan J. Coplin, Washington, D.C., for defendant.

## INTRODUCTION

CHARLES R. RICHEY, District Judge.

On February 8, 1986, plaintiffs entered into a contract to purchase a dwelling at 3972 Georgetown Court, N.W., Washington, D.C. *Complaint,* ¶ 7. One day later, plaintiffs submitted to defendant McLean Financial Corporation an application for a mortgage loan for the purchase of the Georgetown Court house. *Id.* at ¶ 8. Plaintiffs maintain that defendant through its agents "constantly assured" them "that the loan application had been approved and that there were no problems in obtaining the requested loan." *Id.* at ¶ 11. On May 20, 1986, AmeriWest Mortgage Corporation (hereinafter "AmeriWest"), an entity whose involvement in their mortgage application allegedly was never disclosed to plaintiffs, mailed plaintiffs a notice that their application for a mortgage loan had been denied. *Id.* at ¶ 13.

On December 2, 1986, plaintiffs brought this lawsuit, charging defendant with violation of the Equal Credit Opportunity Act (hereinafter "ECOA"), 15 U.S.C. § 1691, breach of contract, "fraud and intentional misrepresentation," breach of fiduciary duty, and negligence. Now before the Court is defendant's motion to dismiss all claims in this complaint, a motion that plaintiffs vigorously oppose. The Court has considered the motion, the Opposition thereto, the legal memoranda submitted by both parties, and the underlying law. The Court will deny defendant's motions to dismiss the ECOA claim, the fraud claim, the breach of fiduciary duty claim, and the negligence claim. The Court will grant defendant's motion to dismiss the breach of contract claim, and will dismiss that claim without prejudice.

## THE COMPLAINT STATES A CLAIM FOR VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT ON WHICH THIS COURT MAY GRANT RELIEF.

The Equal Credit Opportunity Act specifies that "within thirty days ... after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." 15 U.S.C. § 1691(d)(1). In Count One of the Complaint, plaintiffs contend that defendant was required to inform them that their loan application had been denied within thirty days after they submitted their "completed" application. *Complaint* at ¶ 15. Plaintiffs contend both that the notice they received was not sent within that thirty-day period and that defendant itself never notified plaintiffs of the adverse action on their loan application. *Id.* Defendant has moved to dismiss Count One of the Complaint, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim on which relief may be granted.

Defendant is correct to argue that plaintiffs were not entitled to notification of adverse action within thirty days after they applied for their loan. Plaintiffs fail to recognize the meaning of "completed application" in the context of the ECOA. The regulations issued to implement the ECOA specify that a "completed application" is:

> an application in connection with which a creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested

(including, but not limited to, credit reports, any additional information requested from the applicant, and any approvals or reports by governmental agencies or other persons that are necessary to guarantee, insure, or provide security for the credit or collateral). The creditor shall use reasonable diligence in obtaining such information.

12 C.F.R. § 202.2(f) (1986). Thus, the regulations make clear that an application is considered "complete" not when the applicant completes it—as plaintiff would have it—but when the creditor has obtained verifying information and whatever other types of reports or information it ordinarily requires to evaluate a loan.[1]

Dismissal of a claim under Fed.R.Civ.P. 12(b)(6) is proper when "the allegations of the complaint itself clearly demonstrate that plaintiff does not have a claim." C.A. Wright and A. Miller, *Federal Practice and Procedure:* Civil § 1357, at 604. As the ECOA regulations make clear, plaintiffs were not entitled to notice within thirty days after they submitted an application they deemed "complete." If this were the only allegation in Count One, the Court would have to grant defendant's motion to dismiss.

█ But plaintiffs allege that defendant violated the ECOA in two other respects as well. They maintain that defendant itself was required to notify them that their application for a mortgage loan had been denied. *Complaint* at ¶¶ 15, 16. They also argue that defendant was required to notify them that another institution would be involved in the decision whether to extend credit. *Id.*

While neither the law nor the regulations provides that a primary lender must inform an applicant that another financial institution is involved in the decision to extend credit, the regulations clearly provide that each "creditor" taking adverse action against the applicant must notify the applicant of that decision. *See* 12 C.F.R. § 202.9(g) (1986). Unless AmeriWest, which ultimately notified plaintiffs that their loan was denied, was an "assignee, transferee, or subrogee" that, "in the ordinary course of business, regularly participates in" defendant's evaluations of mortgage loan applications, *id.* at § 202.2(1), defendant and AmeriWest are separate creditors for the purposes of the ECOA. If so, under the terms of the statute, plaintiffs were entitled to notice from defendant, even if defendant merely adopted AmeriWest's decision.

The Court cannot at this time say whether AmeriWest and defendant had business relations such that defendant did not itself have to inform plaintiffs that their loan application had been denied. As such, the Court must deny defendant's motion to dismiss this count of the complaint.

---

1. To its Motion to Dismiss defendant attached an unsigned affidavit of Jennifer Pattison, a Vice President of defendant Bank; defendant later substituted a signed affidavit for the earlier, inadequate one. Under Fed.R.Civ.P. 12(b), this extra-pleading material converts the motion to one for summary judgment *unless* the Court determines that the material should be "excluded." Pursuant to the discretion provided under this Rule, the Court will not consider extra-pleading material that is not comprehensive enough to facilitate a rational disposition of the action. *See* C.A. Wright and A. Miller, *Federal Practice and Procedure:* Civil § 1366.

The affidavit offered to the Court is not complete enough to support a grant of summary judgment and, accordingly, is not comprehensive enough to merit consideration in this case. Ms. Pattison's affidavit states that "[s]hortly after May 7, McLean Financial Corporation had all of its normally required information," *Pattison Affidavit* ¶ 6, and therefore plaintiffs' application could at that point be considered "com-

plete." The affidavit, however, does not specify exactly what this information may be. Nor does it specify the dates on which defendants possessed each element of that "normally required information." Instead, defendant's affiant merely provides examples of what constitutes "normally required information," *id.* at ¶ 4–5, and then conclusorily states that, as of a certain date, all such information was in hand. It should be clear even to a legal novice that such a conclusory statement does not provide a sufficient factual basis for a Court to find that summary judgment would appropriately be granted. *See Celotex Corp. v. Catrett,* — U.S. —, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); C.A. Wright, A. Miller and M. Kane, *Federal Practice and Procedure:* Civil, at § 2738. Accordingly, as the Court does not find the Pattison affidavit helpful, it will exercise its discretion under Fed.R.Civ.P. 12(b) and will not consider the Pattison affidavit. Therefore, defendant's motion remains a motion to dismiss pursuant to Rule 12(b)(6).

## THE COMPLAINT DOES NOT STATE A CLAIM FOR BREACH OF CONTRACT ON WHICH THIS COURT MAY GRANT RELIEF.

Count Two of the Complaint alleges that plaintiffs and defendant executed several contracts that "were to take effect upon the Defendant's approval of Plaintiff's [sic] credit application." *Complaint* at ¶ 18. Plaintiffs allege that defendant was obligated to process plaintiffs' loan application "promptly and properly," *id.*, and contend that the notice of denial of credit constituted breach of contract. *Id.* at ¶ 19. Defendant has moved to dismiss plaintiffs' breach of contract claim for failure to state a claim on which this Court may grant relief.[2] The Court must grant defendant's motion.

■ While there may be situations in which a loan applicant and a creditor enter into an agreement or series of agreements that ensure that some credit will be provided to the applicant, nothing in the complaint suggests that such unusual arrangements are involved here. Indeed, plaintiffs admit that the "contracts were to take effect upon the Defendant's approval of Plaintiff's [sic] credit application." *Complaint* at ¶ 18. Thus, the complaint alleges that plaintiffs had entered into an a conditional agreement to contract, not a contract, when they submitted their loan application. As such, the Court cannot find that the complaint makes out a claim for breach of a contract to enter into a mortgage loan with plaintiffs.

■ Plaintiffs also allege in Count Two that defendants were obligated to process their loan application "promptly and properly." *Id.* Presumably on the strength of this allegation, plaintiffs argue in their Opposition to the Motion to Dismiss that the Complaint states a claim for breach of an implied contract to process their mortgage loan application with reasonable care. Although the Court is well aware of its obligation, under Fed.R.Civ.P. 8(f), to construe pleadings liberally, *see Conley v. Gibson,* 355 U.S. 41, 45–48, 78 S.Ct. 99, 101–103, 2 L.Ed.2d 80 (1957), the Court cannot find that the Complaint's language amounts to a valid claim for breach of contract.

In their Opposition to the Motion to Dismiss, plaintiffs maintain that District of Columbia law supports the existence of a contract "at the point the loan application is received and acted upon by the lender." *Plaintiff's Opposition to the Motion to Dismiss* (hereinafter "Plaintiffs' Opposition") at 5. The Court agrees that an implied contract may arise at that time. But the Court cannot find that the *Complaint* states a cause of action for breach of such an implied contract. Instead, the complaint denominates this alleged duty to process the applications with reasonable care part and parcel of the contracts *that were to take effect in the future. Complaint* at ¶ 18. And it is the language of the Complaint, rather than argument unsupported by the Complaint, to which the Court must look.

The Court is well aware of its obligation to construe pleadings liberally, and to construe them so as to do substantial justice, when called upon to decide a motion to dismiss. *Adams v. Bell,* 711 F.2d 161, 187 (D.C.Cir.1983), *cert. denied,* 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 678 (1984); *see also Federal Practice and Procedure:* Civil § 1357. But the Court cannot find in the Complaint's clear language a claim that defendant violated an existing contract to process the loan applications promptly and properly. As such, the Court must dismiss, without prejudice, the breach of contract claim.[3]

---

2. The Court notes that plaintiff attached what it deemed the relevant loan application documents as exhibits to its Complaint. These exhibits, just as the Pattison affidavit, would be sufficient to convert this motion to a motion for summary judgment if the Court found them helpful enough to consider. *See supra* note 1, at 1564. Because the documents do not answer all of the Court's questions about whether a contract existed and, if it did, whether it was breached, the Court will not consider the documents at this time and will treat this as a motion to dismiss under Fed.R.Civ.P. 12(b)(6).

3. The other potential problem with plaintiffs' breach of contract claim is that nothing in Count Two, or the paragraphs that are specifically incorporated by reference in Count Two, suggests that plaintiffs tendered consideration adequate to support a contract claim. In Paragraph 26 of the Complaint, however, plaintiffs allege in passing that they paid defendant a "processing fee." Thus, it is possible that plaintiffs did tender consideration for a contract, and, in view of the Court's obligation to interpret complaints liberally on a motion to dis-

## THE COMPLAINT STATES A CLAIM FOR FRAUD ON WHICH THIS COURT MAY GRANT RELIEF.

In Count Three of the Complaint, plaintiffs allege that defendant committed the tort of fraud.[4] Defendant has moved to dismiss this Count, apparently under both Fed.R.Civ.P. 9(b) and Fed.R.Civ.P. 12(b)(6). The Court cannot grant defendant's motion.

Under District of Columbia law, the essential elements of fraud are (1) a false representation, (2) concerning a material fact, (3) made with knowledge of its falsity and the intent to deceive or made recklessly, either in disregard of its falsity or without positive knowledge of its truth, and (4) upon which reliance is placed. *See, e.g., Higgs v. Higgs,* 472 A.2d 875, 876 (D.C. 1984); *Howard v. Riggs National Bank,* 432 A.2d 701 (D.C.1981); *Jacobs v. District Unemployment Compensation Board,* 382 A.2d 282 (D.C.1978). Accordingly, this Circuit has interpreted Fed.R.Civ.P. 9(b)'s requirement that claims of fraud be pleaded "with particularity" to mean that the complaint must state "the time, place and content of the false misrepresentations, the fact misrepresented, and what was obtained thereby." *United States Ex Rel. Joseph v. Cannon,* 642 F.2d 1373 (D.C.Cir. 1981), *cert. denied,* 455 U.S. 999, 102 S.Ct. 1630, 71 L.Ed.2d 865 (1982). The pleader must also specify the individual who made such misrepresentations. *In re Student Marketing Litigation,* 413 F.Supp. 1156, 1157 (D.D.C.1976); *Moore's Federal Practice,* ¶ 9.03, at 9–23—9–24.

Rule 9(b) is not a substitute for a motion for failure to state a claim under Fed.R. Civ.P. 12(b)(6). Rather, the Rule requires that the allegations of fraud put a defendant on notice of precisely what he or she must defend against. C.A. Wright and A. Miller, *Federal Practice and Procedure:* Civil §§ 1297–98. Accordingly, Rule 9 does not establish an inflexible requirement that pleadings be exhaustive; rather, it "is to be read in tandem with the Rule 8, Fed.R. Civ.P., requirement of simplicity in drafting and flexibility in reviewing pleadings." *Fink v. National Savings & Trust,* 772 F.2d 951 (D.C.Cir.1985). Thus, for instance, while reliance is an essential element of a fraudulent misrepresentation claim, it need not be specially pleaded if it can readily be inferred from the allegations in the complaint. *See Democratic National Committee v. McCord,* 416 F.Supp. 505, 509 (D.D.C.1976).

■ Count Three of the Complaint contains several allegations, each of which could conceivably be the basis for plaintiffs' claim of fraud. Plaintiffs' first allegation is that defendant represented that plaintiffs would receive "a prompt response" to their loan application and that defendant's *"failure to respond,* despite the continued requests by the Plaintiffs, *is an intentional and willful misrepresentation of the services provided to the Plaintiffs by the Defendants."* Complaint at ¶ 22 (emphasis added). If this is the basis for plaintiffs' fraud claim, it comports neither with Rule 9(b) nor with Rule 12(b)(6), as the allegation utterly fails to make out a claim for fraud. While defendant's alleged assurance of prompt action could conceivably be an "intentional misrepresentation," defendant's failure to *act* as promised is not a representation of any kind. Although there are circumstances in which acts, rather than representations, may give rise to fraud, *see Tucker v. Beazley,* 57 A.2d 191, 193 (D.C.Mun.App.1948), plaintiff does not allege that defendant's acts fit into that category. Accordingly, the Court cannot find that this allegation meets the demands of Rule 9(b), or, for that matter, Rule 12(b)(6).

The remaining allegations in Count Three of the Complaint, however, are sufficient to overcome a Rule 9(b) challenge. Count Three makes it clear that plaintiffs allege that Greg Malonovich and other unnamed agents, employees, or servants of defendant told plaintiffs that there was "no

---

miss, the Court does not rely on lack of consideration in its dismissal of the contract claim.

**4.** Plaintiffs style this Count as one for "fraud and intentional misrepresentation." Intentional misrepresentation is, however, an essential element of the tort of fraud, not a separate tort in itself. *Pyne v. Jamaica Nutritional Holdings Ltd.,* 497 A.2d 118 (D.C.1985); *Remeikis v. Boss & Phelps, Inc.,* 419 A.2d 986 (D.C.1980).

problem" with their loan, that defendant was a lender that would make the loan if plaintiffs met the bank's lending criteria, and that plaintiffs in fact met those criteria. *Complaint* at ¶¶ 11, 23. Plaintiffs further allege that Mr. Malonovich and other of defendant's agents, employees, and servants, failed to disclose the allegedly material fact that AmeriWest, and not defendant alone, would pass on plaintiffs' application. Plaintiffs also contend, although without specifying the actual times, that these representations were made at various points between February 9, 1986, and May 20, 1986. They allege that they relied on these representations and, as a result, were damaged. These allegations are sufficient—barely sufficient—to satisfy the requirements of Fed.R.Civ.P. 9(b). *See United States ex rel. Joseph v. Cannon,* 642 F.2d at 1387.

Thus, the Complaint sets forth five properly pleaded separate statements or omissions as the basis for plaintiffs' claim for fraud: the alleged statement that defendant was a lender; the alleged statement that defendant would make a loan to plaintiffs if they met defendant's lending criteria; and defendant's alleged failure to disclose the fact that AmeriWest, and not defendant alone, would decide whether to approve plaintiffs' application; the alleged assurance that there was "no problem" with plaintiffs' loan; and the alleged statement that plaintiff met defendant's lending criteria. As the Court will make clear, only the last two of these alleged statements may, as a matter of law, give rise to a cause of action for fraud.

■ Those alleged misrepresentations and omissions are "material" and grounds for fraud only if they were *designed to induce plaintiffs* to take actions they would have refrained from if they had been aware of the actual facts. *See Rothenberg v. Aero Mayflower Transit Co.,* 495 F.Supp. 399, 406 (D.D.C.1980); *Kapiloff v. Abington Plaza Corp.,* 59 A.2d 516, 517 (D.C.Mun.App.1948). Simply put, nothing in the complaint even vaguely suggests that defendant knowingly or recklessly concealed the role of AmeriWest in order to induce plaintiffs to enter into a transaction.

It is neither pleaded by plaintiffs nor sensible for the Court to assume that plaintiffs, who wanted not a mortgage loan *from this defendant* but a mortgage loan *at the terms specified by this defendant* would have withdrawn their application had they known about AmeriWest's role. Plaintiffs nowhere hint that they were interested in dealing only with defendant. Indeed, by alleging that they were damaged by their failure to obtain financing *at the rate and under the terms* agreed to by defendant, *Complaint* at ¶ 24, plaintiffs implicitly admit that the identity of the actual lender was a matter of indifference to them. Thus, the alleged misrepresentation of defendant's status as "lender" could not have been material.

Neither is defendant's alleged assurance that it would grant plaintiffs' loan if they met defendant's loan criteria a ground for fraud. It is possible that defendant's alleged statement was made in order to induce plaintiffs to seek a mortgage loan only from defendant. It is also possible that plaintiffs relied on this promise, to their detriment. But the Complaint does not support a claim that the only allegedly fraudulent element in this statement—that the loan criteria would be defendant's alone—was either material or relied upon. Without that link between the allegedly fraudulent element of the statement, the parties' actions and plaintiffs' reliance, there is no claim for fraud. *E.g., King v. Industrial Bank of D.C.,* 474 A.2d 151, 155 (D.C.1984).

■ This is not to say that the fraud count must be dismissed. The Complaint also alleges that defendant's employees told plaintiffs that there was "no problem" with their loan application and that they met defendant's loan criteria. At the very least, the Complaint's allegations that defendant was not involved in the lending decision support an inference that these statements may have been made recklessly in order to induce plaintiffs not to withdraw their loan application. This allegation is sufficient to get by a motion to dismiss and, as a result, the Court cannot grant defendant's motion.

### THE COMPLAINT STATES A CLAIM FOR BREACH OF A FIDUCIARY DUTY ON WHICH THIS COURT MAY GRANT RELIEF.

In Count Four of the Complaint, plaintiffs allege that defendant owed them a fiduciary duty by virtue of their loan application, processing fees, and defendant's promises to plaintiffs. *Complaint* at ¶ 26. Plaintiffs allege that defendant owed them a duty to process their application promptly and properly, to "accurately appraise" [sic] plaintiffs of the status of their loan application, to inform them if the lending decision was to be made by others, and to advise plaintiffs promptly if there were difficulties in connection with their application. *Complaint* at ¶ 26. Pursuant to Fed.R.Civ.P. 12(b)(6), defendant moves that this Count be dismissed because District of Columbia law does not recognize a fiduciary duty between lender and loan applicant.

The Court is not convinced by defendant's argument that a fiduciary duty can *never* exist between a lender and a loan applicant. Most obviously, if a loan applicant has deposited escrow or other monies with the potential lender, his or her acts have given rise to a fiduciary duty on the lender's part. *See, e.g., Wagman v. Lee,* 457 A.2d 401 (D.C.), *cert. denied,* 464 U.S. 849, 104 S.Ct. 158, 78 L.Ed.2d 145 (1983). While the Complaint does not allege facts such as these, which would clearly create a fiduciary relationship, it does support an inference that defendant owed plaintiffs a fiduciary duty.

District of Columbia law has deliberately left the definition of "fiduciary relationship" flexible, so that the relationship may change to fit new circumstances in which a special relationship of trust may properly be implied. *Urban Investments, Inc. v. Branham,* 464 A.2d 93, 105 (D.C.1983) (Mack, J., dissenting). One characteristic that District of Columbia courts have traditionally looked for is a "special confidential relationship" that transcends an ordinary business transaction and requires each party to act with the interests of the other in mind. *Id., see also, Vicki Bagley Realty v. Laufer,* 482 A.2d 359 (D.C.1984); *Wagman v. Lee,* 457 A.2d 401. It may be that the facts of this case will demonstrate that the loan agreement required plaintiffs to disclose information that defendant was to keep confidential and it may be that defendant failed to keep that express or implied promise of confidentiality. If so, plaintiff will have made out a claim for breach of fiduciary duty. *See, e.g., Vassiliades v. Garfinckel's,* 492 A.2d 580 (D.C. 1985).

The Court has an additional reason for denying defendant's motion to dismiss. Plaintiffs maintain that defendant here acted not merely as a lender but, as a result of its actions, became a broker for or an agent of plaintiffs and thereby acquired a fiduciary duty to them. *Plaintiffs' Opposition* at 9. As the law is well settled that a broker or agent owes its principal a fiduciary duty, *see, e.g., Vicki Bagley Realty v. Laufer,* 482 A.2d 359, 364 (D.C.1984); *Urban Investments, Inc. v. Branham,* 464 A.2d 93 (D.C.1983), plaintiffs have stated a claim on which the Court may grant relief if the Complaint supports their agency argument.

The language of the Complaint supports an inference that plaintiffs and defendant were engaged in an arms-length business transaction in which plaintiffs merely applied for a loan and defendant, along with AmeriWest, processed that application. It also supports an inference that defendant was acting as an independent contractor that, without explicit or implicit authorization or control by plaintiffs, attempted to place plaintiffs' loan with a secondary institution. If either of these descriptions properly characterizes plaintiffs' relationship with defendant, defendant had no fiduciary duty toward plaintiffs and the Court would have to dismiss this Count of the Complaint. *See, e.g., Urban Investments, Inc. v. Branham,* 464 A.2d 93, 96 (D.C.1983) (arms-length business transaction not give rise to agency relationship or fiduciary duty); *Rose v. Silver,* 394 A.2d 1368 (D.C. 1978), *reh'g. denied,* 398 A.2d 787 (D.C. 1979) (independent contractor not a fiduciary absent special circumstances).

But the language of the Complaint equally supports a different reading. While the

Complaint does not allege that defendant became plaintiffs' agent, *see Johnson v. Bechtel Associates Professional Corp.*, 717 F.2d 574 (D.C.Cir.1983) (control necessary element for agency), *rev'd on other grounds sub nom. Washington Metropolitan Area Transit Authority v. Johnson*, 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984), the Complaint may plausibly be read to allege that defendant acted as a broker between plaintiffs and AmeriWest and acted on behalf of both parties when it attempted to place plaintiffs' loan with AmeriWest.[5] In such circumstances, defendant owed plaintiffs at the least a duty of good faith and fair dealing, *see Urban Investments v. Branham*, 464 A.2d at 96, and may have owed plaintiffs a duty to act with plaintiffs' interests in mind. If so, this would rise to the level of a fiduciary duty. *Id.; Bloomgarden v. Coyer*, 479 F.2d 201 (D.C.Cir.1973).

In sum, the Complaint alleges two plausible grounds on which plaintiffs may prove that defendant had and breached a fiduciary duty owed to plaintiffs. Because the Court is obliged to read the Complaint liberally on a motion to dismiss, and to dismiss a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. at 102, the Court cannot grant defendant's motion to dismiss this Count of the Complaint.

## THE COMPLAINT STATES A CAUSE OF ACTION FOR NEGLIGENCE ON WHICH THIS COURT MAY GRANT RELIEF.

In Count Five of the Complaint, plaintiffs charge defendant with negligence, and they specifically allege that defendant negligently processed and reviewed plaintiffs' loan application and negligently failed to inform defendant that another institution would decide whether to grant plaintiffs' loan. Defendant has moved to dismiss this count for failure to state a claim on which the Court may grant relief, pursuant to Fed.R. Civ.P. 12(b)(6). Defendant argues first that the Equal Credit Opportunity Act (ECOA) preempts the common law negligence action. Defendant also argues that, even if the action is not preempted, the claim is not cognizable under District of Columbia law. Neither argument is convincing.

■ It is difficult for the Court to discern the basis for defendant's preemption argument, as defendant provides no authority for its point and both the statute's language and its legislative history undercut defendant's argument. First, the language of the ECOA does not support the preemption claim. The ECOA does not create an all-encompassing scheme to regulate all relations between lenders and their potential customers. Instead, it is an effort to ensure that credit is available on a *nondiscriminatory* basis. *See* 15 U.S.C. § 1691a. Moreover, both the statute and its legislative history *explicitly* state that the ECOA was not designed to preempt complementary state laws or causes of action. *See* 15 U.S.C. § 1691d; Sen.Rep. 94–589, 1976 U.S.Code Cong. & Admin.News 403, 409–15; H.Conf.Rep. 94–873, 1976 U.S. Code Cong. & Admin.News 429. Thus, the Court must conclude that the statute does not preempt the common law negligence action.

To establish a cause of action in negligence, plaintiffs must prove that defendant owed them a duty of care, breached that duty, actually and proximately harmed them by breaching that duty, and damages. *E.g., District of Columbia v. Fowler*, 497 A.2d 456 (D.C.1985). Absent a duty of care, there can be no liability in negligence. *Westinghouse Electric Corp. v. Nutt*, 407 A.2d 606 (D.C.1979); W. Prosser and W.P. Keeton, The Law of Torts, § 53, at 357 (1984).

5. An implied-in-fact contract for brokerage services arises when (a) the services were carried out under such circumstances as to give the recipient of the services to understand that they were done for the recipient, (b) the circumstances put the recipient on notice that the services were not done gratuitously, and (c) the services were beneficial to the recipient. *H.G. Smithy Co. v. Washington Medical Center, Inc.*, 374 A.2d 891, 893 (D.C.1977). Whether plaintiffs can show that such an implied-in-fact contract existed between them and defendant is a question that the Court does not address at this time.

■ No District of Columbia Court has been confronted with an action for negligence arising out of a bank's failure to process a loan application with due care, and, consequently, District of Columbia law is silent on whether a bank owes a duty of care in this situation. If the District of Columbia allowed certification of state law questions from federal to state courts, certification would obviously be proper here. *See e.g., Lehman Brothers v. Schein,* 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974). Unfortunately, there is no procedure for certification to the District of Columbia courts, and, as such, this Court has no option but to decide a question of first impression of local law. *See id.,* at 390–91, 94 S.Ct. at 1744.

The Court is not without guidance in this task. The District of Columbia has traditionally looked to the State of Maryland for its common law, *e.g., Watkins v. Rives,* 125 F.2d 33, 35 (D.C.Cir.1941); *Duvallon v. District of Columbia,* 515 A.2d 724, 726 (1986), and the Maryland Court of Appeals has recently found that a bank may, in certain circumstances, owe a duty to process a loan application with reasonable care. *Jacques v. First National Bank of Maryland,* 307 Md. 527, 515 A.2d 756, 763–65 (1986). The Maryland Court found that, where only economic loss was at issue and the parties were in privity or other close relation, and where the defendant held itself out as the possessor of some skill in a public calling and the plaintiff relied on that skill when agreeing to the transaction, the defendant owed a duty of care to the plaintiff. Accordingly, the Court found that the defendant Bank owed a duty to process a loan application with reasonable care when it had guaranteed the interest rate and the applicant had paid a loan processing fee.

The complaint in the instant case alleges analogous circumstances. Plaintiffs claim that defendant guaranteed them an interest rate of 10¼ per cent, *Complaint* at ¶ 9, and they claim (although not in Count Five) to have paid "processing fees." These circumstances are, as the Maryland Court found, enough to create a duty of care between the parties. *See id; see also* 63 C.J.S. *Negligence* §§ 4(6)–4(7); *Ultramares*

*Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931); *Glanzer v. Shepard,* 233 N.Y. 236, 135 N.E. 275 (1922).

Moreover, by alleging that the Bank accepted the processing fees, plaintiffs allege that the Bank implicitly agreed to process the loan application. And a logical corrollary to this implied promise to process the application is an implied promise to do so with reasonable care, else the promise and the fee payment are meaningless. *See Jacques v. First National Bank of Maryland,* 515 A.2d at 762.

Defendant's own alleged behavior supports this conclusion. The Complaint alleges that defendant extended assurances that there were "no problems" with plaintiffs' application; this alleged statement implies that defendant actually examined whether problems existed. The Court believes that defendant incurred an obligation to process the application with reasonable care when it accepted the application, but it also finds that defendant's alleged acknowledgement of the application, and alleged attention to the application, show that defendant understood itself to have a duty to plaintiffs. This ostensible acknowledgement of a duty to plaintiff might not matter if defendant had been a Good Samaritan extending a helping hand to a stranger, but defendant is a business with a public calling that must process the applications potential customers have paid them to process. In the face of defendant's alleged acceptance of a duty toward plaintiffs, whose application and fee it alleged accepted, the Court cannot find that no duty existed.

The Complaint alleges that defendant breached this duty of care and that the breach of duty was the actual and proximate cause of plaintiffs' failure to secure a mortgage loan for the same amount of money and with the same interest rate. Accordingly, the Complaint states a cause of action for negligence, and defendant's motion to dismiss must be denied.

In sum, the Court will grant defendant's motion to dismiss the breach of contract claim, but it will deny defendant's motion to dismiss the claims for violation of the Equal Credit Opportunity Act, fraud,

breach of fiduciary duty, and negligence. The Court will enter an Order, of even date herewith, memorializing these decisions.