**Frank DUFAY and Mary Dufay, husband and wife, Plaintiffs–Appellants,**

v.

**BANK OF AMERICA N.T. & S.A., OF OREGON and TRW Inc., Defendants–Appellees.**

No. 94–36117.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 1996.

Decided Aug. 26, 1996.

Victoria E. Hatch, Victoria Hatch & Associates, Portland, Oregon, for plaintiffs-appellants.

Steven K. Blackhurst and Lori Irish Bauman, Ater, Wynne, Hewitt, Dodson & Skerritt, Portland, Oregon, for defendant-appellee.

Before: GOODWIN, and SCHROEDER, Circuit Judges, and ARMSTRONG, District Judge.*

GOODWIN, Circuit Judge:

Frank and Mary Dufay appeal a summary judgment in favor of defendant Bank of America Oregon ("Bank of America" or the "Bank"). The district court held as a matter of law that Bank of America had responded to the plaintiffs' loan application within 30 days of its completion as required by the Equal Credit Opportunity Act (the "ECOA") 15 U.S.C. § 1691. We vacate the summary judgment and remand.

## STATEMENT OF THE CASE

The Dufays sued the bank and two credit reporting agencies for their alleged misconduct with respect to the handling of the Dufays' credit reports and applications for a loan secured by real property. (The claims against the credit agencies are not at issue in this appeal). The Dufays alleged that Bank of America failed to make a decision within 30 days after the completion of their loan application as required by the ECOA. The Dufays claimed to have suffered "out-of-pocket expenses, extra interest expense, damage to their credit reputation, inconvenience, embarrassment and, now, attorney fees." For relief, the Dufays requested, pursuant to 15 U.S.C. § 1691e, "actual damages

* Honorable Saundra Brown Armstrong, United States District Judge for the Northern District of California, sitting by designation.

in a sum to be proven at trial, plus punitive damages and plaintiffs' costs, disbursements and attorney fees incurred herein."

After substantial discovery had been accomplished and a status report was made, the bank's motion for summary judgment was heard before Magistrate Judge John Jelderks. In due course, the district court, the Honorable Malcolm Marsh, presiding, adopted the Findings and Recommendation of the magistrate judge and granted summary judgment in favor of Bank of America.

## FACTS

This litigation arose out of a loan application that became controversial when the plaintiff borrowers learned, possibly after undue delay, that the appraisal of the real property offered as security did not reach a value necessary to induce the bank to lend as much money as the borrowers wanted to borrow. Apparent inconsistencies and changed dates on documents are urged by the Dufays as ground for reversal because, they assert, material questions of fact exist in the record which cannot be resolved on motion for summary judgment.

The bank argues, in support of the judgment, that no matter how the dates of documents are interpreted, the loan application was not "complete" within the meaning of the relevant statute until questions about the appraisal were resolved to the bank's satisfaction. The bank also asserts that it acted within 30 days of the completed review of the appraisal to notify the Dufays that their application was denied. The following time line has been gleaned from the record.

3/31/92 Dufays went to Bank of America and signed loan documents, and wrote a check for appraisal fee.

4/3/92 Bank orders preliminary title report.

4/7/92 Date Bank of America claims loan application was made. Date bank requested appraisal. Also original date on the Mortgage Cover Letter in which Bank stated that the loan application was complete. The date on this Letter was apparently changed to 7/1/92 by the bank after the review of the appraisal was completed.

4/9/92 Bank of America requested first credit report.

4/13/92 Mr. Dufay's employer filled out employer verification form to send to Bank of America.

4/14/92 First credit report received.

4/15/92 Appraisal completed, but no copy sent to Dufays.

4/16/92 Date Bank of America probably received verification for Mr. Dufay's employment according to Loan Status Report. The date on the Loan Status Report was later altered to read 5/16/92.

4/22/92 Employment Verification Form for Mrs. Dufay received.

4/27/92 Dufays sent unsolicited letter to Bank of America explaining certain items in their credit report.

5/1/92 Bank of America made the Dufays aware of a problem with the appraisal. (Property not given enough value to secure the desired loan.)

5/26/92 Dufays called Bank of America to complain about the delay in a decision on their loan application.

5/28/92 Date by which Mr. Dufay may have complained about the appraisal, prompting a review. (Internal bank memorandum).

6/4/92 Bank "faxed" Mr. Dufay a copy of the appraisal.

6/8/92 Dufays "faxed" a letter to Bank of America detailing complaints about the appraisal.

6/12/92 Bank received updated credit report from Equifax. Bank reverified Dufays' employment by telephone.

6/24/92 Review of appraisal completed by Bank of America. Date Bank of America claims application was complete.

7/1/92 Dufays received a copy of June 24 review of appraisal.

7/17/92 Bank of America sends letter denying loan.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment as a question of law ("*de novo*"). *Musick v. Burke*, 913 F.2d

1390, 1394 (9th Cir.1990). In ruling on a motion for summary judgment, the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## DISCUSSION

### I. Application of The Equal Credit Opportunity Act

■ The relevant section of the ECOA states that

[w]ithin thirty days (or such longer reasonable time as specified in regulations of the Board for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application. 15 U.S.C. § 1691(d)(1).

The applicable regulation defines a completed application as:

An application in connection with which a creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested.... The creditor shall exercise reasonable diligence in obtaining such information. 12 C.F.R. § 202.2(f).

We must determine whether the record on summary judgment created a question of material fact concerning the day the Dufays' loan application was "completed" within the meaning of the regulation cited above. *See, e.g., High v. McLean Financial Corp.*, 659 F.Supp. 1561, 1564 (D.D.C.1987) ("an application is considered "complete" ... when the creditor has obtained verifying information and whatever other types of reports or information it ordinarily requires to evaluate a loan").

### II. Completion of the Loan Application

The application was not complete until Bank of America received, through its exercise of reasonable diligence, the last piece of information regularly obtained in the loan application process. 12 C.F.R. § 202.2(f).

The Dufays argue that their loan application was complete on April 15 because that is the day the appraisal was finished and given to Bank of America. The bank argues that the application was not yet complete because other necessary information was still outstanding, i.e. the bank had not yet received verification of the Dufays' employment. The bank claims it did not receive Mr. Dufay's verification of employment until May 16, but a review of the relevant documents points to April 16, the date advocated by Mr. Dufay, as the more likely date that Bank received his employment verification.[1]

Those arguments aside, because Bank of America did not receive the employment verification for Mrs. Dufay until April 22, the loan application was not complete until that date. Apart from questions about the appraisal, and possible reopening of the application on April 27 when the Dufays sent an unsolicited letter to the bank to explain some items on their credit report, the application was nearing completion. If the letter was sent on April 27, it probably was not received until at least 2 or 3 days later. The district court could assume that the Dufays wanted the bank to consider this letter with their loan application. Therefore, the receipt of this new information could mean that the loan application was not complete until Bank of America received the letter on or about April 30, extending the reply deadline 30 more days until May 30.

Between April 30 and May 28 or June 4, depending upon when the appraisal review actually began, the record shows no apparent activity on the Dufay loan application. Bank of America states, however, that it was in the process of obtaining an updated credit report and reverification of employment by telephone to complete the loan application. Lurking in this time frame is a question of reasonable diligence, which a trial court ordinarily does not attempt to determine from motion papers alone. Title 12 C.F.R. § 202.2(f) requires, but does not define, reasonable diligence on the part of the lender.

---

1. Mr. Dufay's employer signed the employment verification form on April 13, 1992. It seems unlikely that it took over a month to arrive at the offices of Bank of America.

### III. Effect of Dufays' Complaint About Appraisal

The court next had to consider the effect of Dufays' complaint about the value contained in appraisal. The first difficulty is that the record is unclear on the date the Dufays learned of the appraised value. The bank's own evidence seems to point to two different dates.

According to a Bank of America internal memorandum dated May 26, Mr. Dufay called the bank to complain about the delay in learning of the bank's decision. Two days later, Mr. Dufay complained again, also noted by an internal memorandum, this time about the low appraisal value of his house. Also on May 28, Roger Smith, a Bank of America vice president, began a review of the appraisal.

The affidavit of Roger Smith describes the timing of events differently than do the internal memoranda. Smith's affidavit states that Mr. Dufay never complained about the low appraisal value until *after* Mr. Dufay had received a copy of the appraisal, and it was this complaint that prompted the review of the appraisal. However, because Bank of America did not send the Dufays a copy of the appraisal until June 4, no review could have begun until June 4, at the earliest. Further complicating matters is the fact that it was not until June 8 that the Dufays "faxed" a letter to Bank of America detailing their complaints about the appraisal and calling attention to perceived discrepancies between the current appraisal and an earlier appraisal. The review of the appraisal was completed on June 24.

Because the notice that the application was being denied was sent on July 17, 1992, the dates upon which the review of the appraisal began and ended become important for two reasons: (1) certainty in fixing the date the application was "completed;" and (2) shedding light on the question of reasonable diligence.

■ The Dufays argue that reevaluation of the appraisal is not part of the normal procedures involved in the review of a loan application and is therefore not contemplated by the relevant ECOA regulation. In the absence of bad faith, which no one has seriously suggested, we hold that a reasonably diligent review of a challenged appraisal is a normal and reasonable part of a proper consideration of a loan application. Such a review does restart the 30 day period under the ECOA. It would not make sense to read the ECOA regulation to exclude from a bank's normal procedures the review of different parts of a loan application if the bank held some doubts about them, especially if those doubts could be resolved in favor of the loan applicant.

■ The Dufays finally complain that the review of the appraisal should not be considered because they did not request it. Whether or not the Dufays requested the review does not matter because a bank is free to review its information for accuracy to make sure that it is basing its lending decision on the correct information.

Because there are genuine factual disputes as to when the application was initially completed, and when the appraisal review began, the trial court was not in a position to determine on summary judgment whether the Bank complied with the 30 day time limit under the ECOA. Further, the trial court could not properly determine whether the Bank had acted with reasonable diligence, even if the 30 day limit was complied with, given the disputes as to the dates when the Bank's actions occurred.

Because the trial court could not, without further investigation, eliminate an apparent conflict between the Smith affidavit that the appraisal was mailed June 4 (and the inference that the review began sometime on or after that date), and the internal memorandum setting May 28 as the date the appraisal review began, we hold that there is a genuine issue of material fact as to the date the loan application was complete. We express no opinion on the questions of reasonable diligence. That matter can be addressed by the trial court after the court determines the date the loan application was complete.

### CONCLUSION

Based on the record before us, there are genuine issues of material fact as to the beginning and ending dates from which to

measure whether Bank of America complied with the 30 day requirement of the ECOA.

The judgment is vacated and the cause is remanded for further proceedings. No party shall recover attorney fees or costs on appeal.

VACATED AND REMANDED.