**Jason KIRK, Plaintiff,**

v.

**KELLEY BUICK OF ATLANTA, INC., and Capital One Auto Finance, Inc., Defendants.**

**No. CIV.A.1:03–CV–2028–R.**

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 14, 2004.

Lisa Dionne Wright, Law Office of Lisa D. Wright, Atlanta, GA, for Plaintiff.

Keith Allen Meador, Office of Keith Allen Meador, Atlanta, GA, Charles Thomas Day, III, Day & Royal, Duluth, GA, for Defendants.

## ORDER

VINING, Senior District Judge.

The plaintiff filed the instant action against Kelley Buick of Atlanta, Inc. ("Kelley Buick") and Capital One Auto Finance, Inc. ("Capital One") alleging that the defendants: (1) violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, and the regulations thereunder, 12 C.F.R. §§ 202.2, 202.9; and (2) willfully and/or negligently violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* Kelley Buick then filed a counterclaim against the plaintiff for breach of contract and a cross-claim against Capital One for indemnification on any judgment entered against Kelley Buick. This matter is currently before the court on cross-motions for summary judgment filed by the plaintiff [Doc. Nos. 31 and 32] and the defendants [Doc. No. 33]. For the reasons set forth below, this court DENIES both the plaintiff's and the defendants' motions on the Equal Credit Opportunity Act claim and GRANTS the defendants' and DENIES the plaintiff's motions on the Fair Credit Reporting Act claim.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 12, 2003, Jason Kirk attempted to purchase a 2001 GMC Sierra, Vehicle Identification Number 1GTHC2111E327531 ("vehicle") from Kelley Buick. Although Mr. Kirk did not obtain financing for the vehicle that day, he entered into a bailment agreement with Kelley Buick whereby Kelley Buick transferred possession of the vehicle to Mr. Kirk pending credit approval from a third-party financial institution and completion of the sales transaction. Pursuant to that agreement, Mr. Kirk filled out a credit application that Kelley Buick sent to a number of financial institutions on April 14, 2003. Although several of these institutions declined to extend Mr. Kirk credit, on April 14, 2003, Capital One sent a letter to Kelley Buick approving Mr. Kirk's application subject to verification of various information contained in the credit application. Specifically, Capital One requested verification of Mr. Kirk's two references and a copy of Mr. Kirk's current year-to-date pay stub.

The defendants admit that neither Capital One nor Kelley Buick notified Mr. Kirk

in writing that Capital One needed verification of this information; however, the defendants contend that Kelley Buick repeatedly notified Mr. Kirk telephonically and/or in person of Capital One's need for the requested verifications. The defendants argue that despite these repeated attempts, Mr. Kirk failed to timely provide the verifications and, therefore, "the loan was not funded in accordance with standard and universal industry practice." (Response of Defendant Capital One Auto Finance, Inc. to Plaintiff's Motion for Summary Judgment, p. 8). However, the plaintiff "maintains that he submitted the requested information to Defendant Kelley." (Plaintiff's Opposition to Defendants['] Motion for Summary Judgment, p. 8).

On June 8, 2003, Mr. Kirk again submitted his credit application to Kelley Buick, and Kelley Buick again submitted the application to Capital One for credit approval. On June 20, 2003, Capital One issued a notice of approval to Kelley Buick pending verification of certain information provided by the plaintiff in his credit application. Although neither Capital One nor Kelley Buick informed the plaintiff in writing of their need for this information, Kelley Buick again orally notified the plaintiff in person and/or telephonically. The defendants allege that Mr. Kirk once again failed to verify his credit application with proof of a recent pay stub, a valid home telephone number, or two references and, therefore, the loan was not funded. Mr. Kirk, however, contends that he provided this information to employees of Kelley Buick and was repeatedly told not to worry about obtaining financing for the vehicle because it was being taken care of. In support of Mr. Kirk's contention is a letter sent from the plaintiff to James Ruffin, an employee of Kelley Buick, on July 16, 2003, providing Kelley Buick with some of the verifying information and requesting guidance on what else needed to be done

to complete the vehicle financing. (Affidavit of Daniel R. Phelps, p. 2 and accompanying documents). On July 17, 2003, one day after Mr. Kirk sent this information to Kelley Buick, Capital One sent a notice to Kelley Buick requesting Mr. Kirk's phone records and noting that without these records "this approval is no longer valid." (Affidavit of Daniel R. Phelps, p. 2 and accompanying documents). The July 17, 2003, notice observed that without this information, the approval would expire on July 20, 2003. Because Capital One purportedly did not receive the requested verifications, Mr. Kirk was unable to obtain financing and was forced to return the vehicle to Kelley Buick on July 20, 2003. On July 21, 2003, the plaintiff filed the instant action alleging the defendants violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, as defined and promulgated by 12 C.F.R. §§ 202.2, 202.9 and willfully and/or negligently violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* Specifically, the plaintiff argues that the defendants violated the above statutes by failing to notify him in writing that his credit application was either deficient or denied. Kelley Buick has also filed a counterclaim against Mr. Kirk for damage to the vehicle and a cross-claim against Capital One for any judgment that may be levied against it.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

156, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir.1996). The moving party's burden is discharged merely by " 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In determining whether the moving party has met this burden, the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson*, 74 F.3d at 1090. Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide genuine issues of material fact but to decide only whether there is such an issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The applicable substantive law will identify those facts that are material. *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2510. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *Id.*

Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* In order for factual issues to be "genuine" they must have a real basis in the record. *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Id.*

## III. EQUAL CREDIT OPPORTUNITY ACT CLAIM

Congress amended the Equal Credit Opportunity Act ("ECOA") in 1976 and required creditors to provide credit applicants with written notification of adverse actions taken on credit applications. Pub.L. No. 94–239 (1976). Aside from the obvious anti-discriminatory effects of this requirement, Congress also intended the ECOA to serve another purpose. Specifically, the Senate Report noted:

[R]ejected credit applicants will now be able to learn where and how their credit status is deficient and this information should have a pervasive and valuable educational benefit. Instead of being told only that they do not meet a particular creditor's standards, consumers particularly should benefit from knowing, for example, that the reason for the denial is their short residence in the area, or their recent change of employment, or their already over-extended financial situation. In those cases where the creditor may have acted on misinformation or inadequate information, the statement of reasons gives the applicant a chance to rectify the mistake.

S. REP. No. 589 (1976), *reprinted in* 1976 U.S.C.C.A.N. 403, 406. The ECOA provides in relevant part:

(1) Within thirty days (or such longer reasonable time as specified in regulations of the Board for any class of credit transaction) after receipt of a **completed application** for credit, a creditor shall notify the applicant of its action on the application.

(2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by -

(A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or

(B) giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request. . . .

15 U.S.C. § 1691(d) (emphasis added). This section of the statute discusses the notification necessary for actions taken after a creditor receives a completed application. Regulation 202.9(a)(1) goes on to state, "A creditor shall notify an applicant of action taken within: (i) 30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or adverse action on the application." 12 C.F.R. § 202.9(a)(1)(i).

The regulations provide further guidance on what form of notification is required when the applicant has submitted an **incomplete application**. *Id.* at 202.9(a)(1)(ii). "A creditor shall notify an applicant of action taken within: (ii) 30 days after taking adverse action on an incomplete application, unless notice is provided in accordance with paragraph (c) of this section." *Id.* Section (c) of Regulation 202.9 provides:

(c) Incomplete applications—

(1) Notice alternatives. Within 30 days after receiving an application that is incomplete regarding matters that an applicant can complete, the creditor shall notify the applicant either:

(i) Of action taken, in accordance with paragraph (a) of this section; or

(ii) Of the incompleteness, in accordance with paragraph (c)(2) of this section.

(2) Notice of incompleteness. If additional information is needed from an applicant, the creditor shall send a written notice to the applicant specifying the information needed, designating a reasonable period of time for the applicant to provide the information, and informing the applicant that failure to provide the information requested will result in no further consideration being given to the application. The creditor shall have no further obligation under this section if the applicant fails to respond within the designated time period. If the applicant supplies the requested information within the designated time period, the creditor shall take action on the application and notify the applicant in accordance with paragraph (a) of this section.

(3) Oral request for information. At its option, a creditor may inform the applicant orally of the need for additional information. If the application remains incomplete the creditor shall send a notice in accordance with paragraph (c)(1) of this section.

■ Thus, this court must initially determine whether Mr. Kirk's application was complete or incomplete. The regulations issued to implement the ECOA provide a completed application is

an application in connection with which a creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested (including, but not limited to, credit reports, any additional information requested from the applicant, and any approvals or reports by governmental agencies or other persons that are nec-

essary to guarantee, insure, or provide security for the credit or collateral).

12 C.F.R. § 202.2(f).

The defendants repeatedly contend that Mr. Kirk's application was complete and that Capital One merely needed verification of certain information contained in the application. While all the information Capital One needed verified was originally contained in the credit application, Capital One required Mr. Kirk to prove this information was correct by providing a current pay stub to confirm his salary and a valid phone bill to confirm Mr. Kirk's home phone number. Thus, Capital One most likely required verification of this information to protect itself against individuals who may claim a certain earning capacity on a credit application yet fail to actually garner this amount in reality. Without verification of this information Capital One would presumably decline to extend credit to the applicant, as was illustrated in the case at bar. Thus, it appears that verification of an applicant's salary, references, and phone number are sometimes required by Capital One before granting credit and, therefore, an application is incomplete without the required verifications. This court's determination that Mr. Kirk's application was not complete without the necessary verifications is bolstered by the United States District Court for the District of Columbia's characterization of a complete application in *High v. McLean Financial Corp.*, 659 F.Supp. 1561, 1564 (D.D.C.1987). In *High,* the court noted "[A]n application is considered 'complete' not when the applicant completes it ... but when the creditor has obtained verifying information and whatever other types of reports or information it ordinarily requires to evaluate a loan." *Id.* Therefore, this court concludes that Mr. Kirk's application was incomplete without the requested verifications and, therefore, must address whether the requirements of 12 C.F.R. § 202.9(c) were met.

Regulation 202.9(c) provides that a creditor must do one of two things when confronted with an incomplete application. First, the creditor can notify the applicant within thirty days of receiving the application of approval of, counteroffer to, or adverse action on the application in accordance with section 202.9(a). These requirements were not initially met because Capital One sought further verification from the plaintiff. Second, the creditor can notify the applicant of the required information within thirty days of receiving the incomplete application in accordance with regulations 202.9(c)(2) or 202.9(c)(3).

Regulation 202.9(c)(2) requires that creditors "send written notice to the applicant specifying the information needed, designating a reasonable period of time for the applicant to provide the information, and informing the applicant that failure to provide the information requested will result in no further consideration being given to the application." Since neither of the defendants provided Mr. Kirk such written notice in this case, this court must determine whether the defendants complied with regulation 202.9(c)(3).

■ Regulation 202.9(c)(3) provides that creditors can request the additional information from the applicant orally. However, "[i]f the application remains incomplete the creditor shall send a notice in accordance with paragraph (c)(1) of this section." It is undisputed that Capital One, through Kelley Buick, orally notified Mr. Kirk of their need for verifications. This notification was sufficient for both parties under 15 U.S.C. § 1691(d)(4). Thus, this court's next determination is whether the defendants complied with the second portion of 202.9(c)(3) requiring them to send a notice in accordance with 202.9(c)(1). Regulation 202.9(c)(1) required them either to notify Mr. Kirk of the action taken in accordance with 202.9(a) or provide a written notice of incompleteness in accordance

with paragraph 202.9(c)(2). Since the defendants have conceded that they did not provide a written notice of incompleteness to the plaintiff, this court must determine whether they complied with regulation 202.9(a). Regulation 202.9(a) requires notification "(ii) 30 days after taking adverse action on an incomplete application, unless notices is provided in accordance with paragraph (c) of this section." Since the defendants admit that written notice was not given in accordance with paragraph 202.9(c) the sole inquiry becomes whether the defendants notified or were required to notify Mr. Kirk thirty days after taking an adverse action on his incomplete application in accordance with 202.9(a). The defendants contend that they were not required to notify Mr. Kirk in writing that his credit approval expired because Capital One approved the application pending verification of the information and, therefore, that Mr. Kirk's failure to provide the verifying information was a withdrawal of his application under regulation 202.9(e) rather than an adverse action taken by Capital One. Thus, the defendants argue that they were not required to comply with regulation 202.9(a)(1). Regulation 202.9(e) provides an exception to the notification requirement

> [w]hen an applicant submits an application and the parties contemplate that the applicant will inquire about its status, if the creditor approves the application and the applicant has not inquired within 30 days after applying, the creditor may treat the application as withdrawn and need not comply with paragraph (a)(1) of this section.

The defendants claim that Mr. Kirk did not provide the verifying information or inquire about his credit applications after submitting the applications to Kelley Buick on August 12, 2003, and June 8, 2003. In support of this contention the defendants submitted the affidavit of Faith Miller, an employee of Capital One, whereby Ms.

Miller states that Capital One heard nothing from either Kelley Buick or Mr. Kirk after approving the April 12, 2003, application pending verification of Mr. Kirk's information. (Affidavit of Faith Miller, ¶ 8). In her affidavit, Ms. Miller also stated that since Mr. Kirk failed to provide any of the requested verifications or inquire about the status of the June 8, 2003, application, Capital One treated his application as withdrawn. *Id.* at ¶ 16. Furthermore, Daniel Phelps, an employee of Kelley Buick stated in his affidavit that despite Kelley Buick's repeated attempts, Mr. Kirk "never fully provided the required and requested documents of verification" relating to his credit applications. (Affidavit of Daniel R. Phelps, ¶¶ 8, 9).

There is also evidence in the record, however, supporting Mr. Kirk's position that he did provide the verifying information to Kelley Buick and inquired about what else needed to be done to secure financing for the vehicle. The defendants' own Motion for Summary Judgment contains a letter from the plaintiff to James Ruffin, an employee of Kelley Buick, providing verifying information and requesting that Kelley Buick direct him on what else needed to be done to complete the financing and sale of the vehicle. (Affidavit of Daniel R. Phelps, ¶ 6 and accompanying documents). Furthermore, the June 24, 2003, fax sent from Capital One to Kelley Buick contains handwritten notations of some of the verifications required by Capital One and the June, 30, 2003, fax sent to Kelley Buick contains the handwritten inscription "done." *Id.*

Because a genuine dispute exists as to whether the parties contemplated that the plaintiff would inquire about his credit application and, if so, whether Mr. Kirk actually inquired about his credit application and provided the verifications, this court is unable to determine whether the defendants were exempted from notifying Mr.

Kirk of the action taken on his credit application under regulation 202.9(e) or failed to notify Mr. Kirk in writing under regulation 202.9(a). Since it is not this court's function to decide genuine issues of material fact on summary judgment, this court denies both the plaintiff's and the defendants' motions for summary judgment on the ECOA claim.

## IV. FAIR CREDIT REPORTING ACT

The parties next move this court for summary judgment on the plaintiff's claim that the defendants violated the Fair Credit Reporting Act by failing to notify the plaintiff of adverse actions taken at least in part, on information contained in the plaintiff's consumer report. 15 U.S.C. § 1681m provides:

> If any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall—(1) provide oral, written, or electronic notice of the adverse action to the consumer. . . .

Thus, this court must first determine whether Mr. Kirk ultimately did not obtain financing for the vehicle because of information contained in his consumer report. The defendants concede that they obtained a copy of Mr. Kirk's consumer report; however, they argue that it was Mr. Kirk's failure to provide the verifying information and not the information contained in his consumer report that prompted Capital One's invalidation of its previous credit approval. In support of this contention, the defendants produced the affidavit of Faith Miller which states that it was Mr. Kirk's failure to provide the required verifications on both the August 12, 2003, and June 8, 2003, applications that prompted Capital One to treat his application as withdrawn and invalidate their previous approval. (Affidavit of Faith Miller, ¶ 8, 16). The plaintiff has provided no evidence that the defendants failure to extend Mr. Kirk credit was based on information contained in his consumer report. In fact, all of the evidence produced in this case shows that the reason Capital One withdrew its credit approval was because it did not receive the requested verifications. Because there is an absence of evidence to support an essential element of the plaintiff's claim—that the defendants did not extend Mr. Kirk credit at least in part on information contained in his credit report, this court grants the defendants' motion for summary judgment and denies the plaintiff's motion for summary judgment on the Fair Credit Reporting Act claim.

In summary, the plaintiff's motions for summary judgment [Doc. Nos. 31 and 32] are DENIED and the defendants' motion for summary judgment [Doc. No. 33] is DENIED with respect to the Equal Credit Opportunity Act claim and GRANTED with respect to the Fair Credit Reporting Act claim.